IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID LEE SPIKES, pro se | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | NO. 10-4822 |
|     v. | : | |
| | : | CRIMINAL ACTION |
| UNITED STATES OF AMERICA, | : | NO. 08-0201-2 |
|     Defendant. | : | |

**Pratter, J.**                                                                                                   April 21st, 2014

## **MEMORANDUM OPINION**

David Lee Spikes pled guilty on December 2, 2008, to three counts of aiding and abetting substantive Hobbs Act robberies, in violation of 18 U.S.C. § 1951(a)(2), and to two counts of aiding and abetting the use or carrying of firearms in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Proceeding pro se, Mr. Spikes moved to vacate, set aside, or correct his sentence under 18 U.S.C. § 2255. (Doc. Nos. 233, 238, 241, 244). The Government moved to dismiss Mr. Spikes's petition, primarily on the grounds that Mr. Spikes waived his right to seek collateral review of his conviction or sentence when he entered into his written Plea Agreement and pled guilty. Mr. Spikes opposes (at Doc. Nos. 238, 241) the Government's Motion to Dismiss (Doc. No. 235) and the Government's Supplemental Motion (Doc. No. 239). The Court requested supplemental briefing (Doc. No. 270), which the parties have since submitted. (Doc. Nos. 271, 272).

After careful consideration of Mr. Spikes's § 2255 Motion and the parties' extensive briefing, and after detailed review of the Plea Agreement as well as the transcript of the December 2, 2008 change of plea hearing, for the reasons discussed below, the Government's

1

Motion to Dismiss, Supplemental Motion (Doc. No. 239), and Second Supplemental Motion (Doc. No. 271) will be granted, and Mr. Spikes's § 2255 Motion (Doc. No. 233) will be denied.[1]

## I. Factual and Procedural Background

A Grand Jury's Superseding Indictment charged Mr. Spikes with three counts of violating, and aiding and abetting a violation of, 18 U.S.C. § 1951(a) (interference with commerce by robbery), and three counts of violating, and aiding and abetting a violation of, 18 U.S.C. § 924(c)(1) (using and carrying a firearm during and in relation to a crime of violence). These charges arose from armed robberies at three pharmacies. On December 2, 2008, Mr. Spikes pleaded guilty to five of the six charges pursuant to a written Plea Agreement.

On September 3, 2009, the Court imposed a sentence of 204 months' imprisonment and ordered Mr. Spikes to pay $41,781 in restitution. Specifically, Mr. Spikes was sentenced to 84 months on Counts 1, 3, and 5 (aiding and abetting robbery), to be followed by two successive 60-month sentences on Counts 2 and 4 (brandishing a gun during a crime of violence). Mr. Spikes was also sentenced to three years of supervised release on Counts 1, 3, and 5, and five years of supervised release on Counts 2 and 4, all to run concurrently. *See* Judgment, Doc. No. 161.

Mr. Spikes filed his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence on September 17, 2010. He argues that he merits relief under § 2255 for (a) his defense counsel's supposed ineffective assistance, (b) the prosecution's misconduct, and (c) the Government's alleged unlawful inducement of his guilty plea. Specifically, Mr. Spikes first alleges that his

---

[1] "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255; *accord United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Although the threshold for an evidentiary hearing is low, *Booth*, 432 F.3d at 546, the files and records of this case make clear that Mr. Spikes is entitled to neither relief nor an evidentiary hearing.

counsel failed to investigate the Government's case and failed to procure so-called *Brady* material prior to advising him to participate in proffer sessions and to plead guilty—conduct which, Mr. Spikes asserts, left undiscovered critical discrepancies in the Government's case and thus fell below an objective standard of reasonableness. Mr. Spikes further asserts that his counsel "was deficient in his knowledge and understanding of the Sentencing Guidelines;" that this ignorance resulted in a higher base offense level and the Court's consideration of uncharged conduct as "charged conduct" at sentencing; and that his counsel also failed to correct problems in the Presentence Investigation Report. Spikes's § 2255 Mot. Addendum 1-4. Second, Mr. Spikes alleges that the prosecutor engaged in prejudicial misconduct. Mr. Spikes asserts that the Government submitted false information to the Court at the change of plea hearing; relied upon evidence it did not possess at that same hearing; used uncharged crimes as relevant conduct in calculating a recommended offense level for sentencing; used statements by co-defendants against Mr. Spikes at sentencing when the Court had already limited the use of such statements; and made an incorrect and prejudicial reference to a nonexistent third superseding indictment. *Id.* Finally, Mr. Spikes contends, he relied on the advice of counsel in entering the guilty plea, which he would not have entered but for counsel's ineffective assistance.[2] *Id.*

      The Government filed its opposition, styled as a Motion to Dismiss. In its opposition, the Government argues that Mr. Spikes's Motion must be dismissed because he had entered into his Plea Agreement knowingly and voluntarily, that this Plea Agreement contains a waiver of direct and indirect appellate rights, and no part of Mr. Spikes's Motion proceeds down the limited

---

[2]     Mr. Spikes's request for relief by way of a reduced sentence rather than seeking a trial calls this contention into logical question.

avenues for appeal left available, given Mr. Spikes's agreement to the waiver provision in his Plea Agreement. Mot. Dismiss 13-15, Doc. No. 235.

In response Mr. Spikes argues that, based on his claims stated in his Motion, enforcing the waiver would constitute a miscarriage of justice.[3] Spikes's Resp. 3-4, Doc. No. 238. While his response essentially reiterated the claims contained in his Motion, Mr. Spikes expanded on his arguments. He contends that the Government, at the plea hearing, intentionally misstated his role in the robbery by falsely stating that he was identified as the individual who robbed a Rite Aid on December 2, 2007. *Id.* at 9-11. He also argues that his counsel was ineffective for failing to object to these false statements of identification. *Id.* at 11. He further asserts that Counsel's not objecting to the Court's consideration of uncharged conduct in departing from the Guidelines allowed for punishment for conduct irrelevant to actual conviction, thereby defeating the reasonable sentencing expectations that the parties contemplated in entering into the Plea Agreement. *Id.* at 14. Finally, Mr. Spikes appears to argue that the Government improperly relied upon the statements of co-defendant, Dennis Burnett, when it argued that the uncharged "relevant conduct" should be added to the Presentence Investigation Report. *Id.* at 15-17.

In Mr. Spikes's Response to the Government's Supplemental Motion to Dismiss (Doc. No. 241), he clarifies that the basis for his constitutional claims, and for his argument that enforcement of the waiver would work a miscarriage of justice, is the Court's supposed reliance during sentencing upon "relevant conduct" to which he did not plead and which was not included in his original Presentence Investigation Report.[4] Spikes's Resp. Supp. Mot. Dismiss, Doc. No.

---

[3] Mr. Spikes also requested an evidentiary hearing. *Id.* at 6.

[4] Mr. Spikes also requests appointment of new counsel.

4

241. In particular, Mr. Spikes argues that uncharged offenses were used to increase his base offense level, and that the treatment of these uncharged offenses as "relevant conduct" violated both the terms of his Plea Agreement and his substantive rights.[5] Mr. Spikes contends that, absent the improper use of the "relevant conduct," his Sentencing Guidelines range would have been 130 to 162 months, rather than the 204 months to which he was sentenced. *Id.* at 8. Mr. Spikes's Presentence Investigation Report was prepared in January 2009, and then revised that August, ahead of his September 3, 2009 sentencing. Mr. Spikes seeks "to be sentenced using the original Presentence Investigation Report that did not contain the errors as the starting point of and departures as agreed upon in the Plea Agreement." *Id.* at 2. As discussed by both the Government and Mr. Spikes, the revised Presentence Investigation Report included as relevant conduct other robberies to which Mr. Spikes had not pleaded guilty.[6]

---

[5]  While Mr. Spikes did not plead guilty to the November 18, 2007 burglary and the December 8, 2007, December 19, 2007, and January 2, 2008 robberies that were included in the August and September Presentence Investigation Reports, at the sentencing hearing, the case agent testified that in the spring of 2009, when confronted with the testimony of his co-defendants, Mr. Spikes admitted that contrary to his initial representations, he had misled authorities about his participation during the robberies and had misrepresented his lack of involvement in at least two robberies. Sept. 3, 2009 Tr. N.T, at 58:1-59:1. Mr. Spikes explained how he came up with the idea of burglarizing pharmacies, and how he continued to participate in robberies. *Id.* 98-99.

[6]  Nearly nine months after the parties completed their briefing, Mr. Spikes filed another brief in support of his original § 2255 motion (Doc. No. 244). In this late-filed brief, he argued for the first time that his four 1996 convictions were improperly used to calculate his Criminal History Category. In short, Mr. Spikes argues that, although he was convicted and sentenced to four years' incarceration for each of the four previous offenses, he ultimately served less than a year for each offense because his sentences were "suspended" pursuant to New Jersey's Intensive Supervision Program. Thus, he argues, these convictions should not have been used to calculate his Criminal History Category, because none of the convictions meets the "1 year + 1 month" duration required for his inclusion in his Criminal History Category calculation under subsection 4A1.1(a) or 4A1.2(e) of the United States Sentencing Guidelines.
   However, even if this claim is meritorious, it is barred by the 1-year statute of limitations in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In this case, under

**II.     Discussion**

Because Mr. Spikes waived his right to collaterally attack his sentence by § 2255 Motion, and because he made this waiver knowing and voluntarily, and enforcing it will not work a miscarriage of justice against him, the Court is constrained to enforce the waiver and, therefore, deny Mr. Spikes's § 2255 Motion.

A criminal defendant can waive his right to file a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. The waiver will only be enforced, however, if it is knowing and voluntary. *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008). If the waiver is enforceable, the court must refrain from exercising subject matter jurisdiction to consider the merits of the motion unless enforcing the waiver would work a miscarriage of justice. *Mabry*, 536 F.3d at 237 n.4; *United States v. Khattak*, 273 F.3d 557, 558, 563 (3d Cir. 2001).[7] A valid

---

the AEDPA, the statute of limitations began to run from the date on which Mr. Spikes's judgment of conviction became final. *See* 28 U.S.C.A. § 2255. "A 'judgment of conviction becomes final' within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). A petitioner has 90 days to file a petition for a writ of certiorari. *See* Sup. Ct. R. 13. The Third Circuit Court of Appeals dismissed Mr. Spikes's appeal on May 24, 2010. Mr. Spikes's did not file a petition for a writ of certiorari. Accordingly, his judgment of conviction became final 90 days later or August 22, 2010. He first raised this claim sixteen (16) months later, on December 13, 2011. Because Mr. Spikes did not raise this claim in an earlier filing and it is not a clarification of a claim Mr. Spikes previously had asserted, the claim is barred by § 2255's "1-year period of limitations," § 2255(f), inasmuch as "[a] prisoner should not be able to assert a claim otherwise barred by the statute of limitation merely because he asserted a separate claim within the limitation period." *United States v. Duffus*, 174 F.3d 333, 338 (3d Cir. 1999); *see also, e.g.*, *United States v. Oliver*, 379 F. Supp. 2d 754, 762-63 (E.D. Pa. 2005).

[7]     As a technical matter, the *Khattak* panel's statement that a court "ha[s] no jurisdiction to consider claims" over a waiver, 273 F.3d at 563, is inaccurate; the jurisdiction exists but may not be exercised. *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007).

waiver also generally bars consideration of the merits of ineffective assistance of counsel claims raised in a § 2255 motion. *Mabry*, 536 F.3d at 241-44.

In a plea agreement, a criminal defendant may even "waive many of the most fundamental protections afforded by the Constitution," provided the waiver is knowing and voluntary. *Khattak*, 273 F.3d at 561 (citing *United States. v. Mezzanatto*, 513 U.S. 196, 201 (1995)). But, of course, a court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Mabry*, 536 F.3d at 238. The court must examine (1) whether the waiver was "knowing and voluntary," based on what occurred and what the defendant contends, and (2) whether the enforcement of the waiver would work a "miscarriage of justice." *Id.* at 237.

It is clear from an examination of the Spikes Plea Agreement and the transcript of the plea colloquy in this case that Mr. Spikes's waiver of his right to file his § 2255 Motion was knowing and voluntary. The Plea Agreement included the following written provision:

> In exchange for the undertakings made by the government in entering this plea agreement, [Mr. Spikes] voluntarily and expressly waives all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

Guilty Plea Agreement ¶ 9.[8]

Mr. Spikes appeared for a change of plea hearing on December 2, 2008. During this hearing, the Court reviewed the Guilty Plea Agreement with Mr. Spikes in detail. First, the Government reviewed the terms of the agreement on the record. Dec. 2, 2008 Tr. N.T., at 16-24.

---

[8] Additionally, apropos of Mr. Spikes's argument here that his counsel was ineffective, the Agreement also includes a representation that "[t]he defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and his lawyer have fully discussed this Plea Agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty." Guilty Plea Agreement, ¶ 11.

7

The Court confirmed with Mr. Spikes that he had read the Guilty Plea Agreement and that he had reviewed it with his attorney. *Id.* at 25-26. The Court then specifically reviewed with Mr. Spikes the fact that in signing the Plea Agreement he knew he would be waiving a number of his rights, including his appellate rights in all but a few enumerated circumstances. *Id.* at 26, 33. Mr. Spikes confirmed that he understood the waiver implications of signing the Plea Agreement. *Id.* at 33. The Court asked Mr. Spikes if he understood that by signing the Plea Agreement, he was giving up his right to file a petition for a writ of habeas corpus to challenge his conviction, his arrest, or his prosecution, and Mr. Spikes acknowledged, under oath, that he would give up that right by signing the Plea Agreement and pleading guilty. *Id.* at 33. Mr. Spikes also agreed that he understood that he could appeal only if the Government appealed his sentence, if the Court imposed an illegal or unreasonable sentence, or if there were an error in the change of plea proceedings.[9] *Id.* at 33-34, 54. Likewise, Mr. Spikes acknowledged that he would be bound by his guilty plea even if he disagreed with or was disappointed by his sentence, or with the contents

---

9   Specifically, the Plea Agreement stated that:
   If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
   (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 6 above;
   (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;
   (3) the sentencing judge, exercising the Court's discretion pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guidelines range determined by the Court; and/or
   If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.
Guilty Plea Agreement, ¶ 9.[9]

of the Presentencing Report. *Id.* at 50-53.[10] The record thus shows that Mr. Spikes knowingly and voluntarily waived his right to collaterally attack his conviction.

For that reason, presumably, the focus of Mr. Spikes's argument is that the enforcement of his waiver would work a miscarriage of justice. The Court has an affirmative duty to consider "whether enforcement [of the collateral waiver] would work a miscarriage of justice." *Mabry*, 536 F.3d at 237. The Court embraces the use of a "common sense approach" to "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." *Mabry*, 536 F.3d at 242-3. Eschewing a precise definition of "miscarriage of justice," the Court of Appeals for the Third Circuit has instead set forth several factors to consider when determining whether to enforce an otherwise proper waiver. These factors include "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a Sentencing Guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."[11] *Khattak,* 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)). The Third Circuit Court of Appeals has identified several instances in which enforcing a collateral attack waiver may constitute a miscarriage of justice, such as circumstances in which

---

[10] The plea colloquy was in accordance with Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, which provides that:

> Before the court accepts a plea of guilty . . . the defendant may be placed under oath, and the court address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(1)(N)

[11] The same standard applies to waivers of appeals and waivers of collateral review. *United States v. Shedrick*, 493 F.3d 292, 297-98 (3d Cir. 2007).

the waiver's enforcement would bar a defendant's appeal on grounds expressly preserved in the plea agreement, or in which counsel was ineffective in negotiating the plea agreement that contained the waiver. *Mabry*, 536 F.3d at 243 (citing *Shedrick*, 493 F.3d at 303; *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005)). The Third Circuit Court of Appeals cautioned, however, that it is an "unusual circumstance" in which an "error amounting to a miscarriage of justice may invalidate the waiver." *Id.* at 562.

Mr. Spikes's waiver was broad. The only exceptions in his waiver were in very limited situations.[12] Agreement, ¶ 9. None of the exceptions permit collateral attack (and even if they did, they would be inapplicable in this case). Specifically, because of the Government's section 5K1.1 motion, the Court sentenced Mr. Spikes to 84 months for Counts 1, 3, and 5—well below the statutory maximum of 20 years and also below the Guidelines range.[13] *See* Judgment. Additionally, because of the Government's section 5K1.1 motion, Mr. Spikes's sentences of 60 months for each of Counts 2 and 4 (the 18 U.S.C. § 924(c)(1) violations) were well below even the statutory minimums of seven and twenty-five (25) years, respectively. Finally, the Court did not depart upwards from the Guidelines and the Government did not appeal the sentence or conviction. As a result, enforcing the waiver at this stage would not prevent Mr. Spikes from pursuing a claim that had been expressly preserved in the Plea Agreement, if that were what he was doing.

---

[12]   *See supra* note 9.

[13]   As will be addressed in greater detail below, even assuming that the Guideline range for Counts 1, 3, and 5 should have been 130 to 162 months instead of the 168 to 210 months calculated in Mr. Spikes's final Presentence Investigation Report, the sentence imposed was below both of those Guidelines calculations.

Additionally, the Court's refusal to exercise jurisdiction over Mr. Spikes's claims—that is its enforcement of the collateral attack waiver—will not constitute a miscarriage of justice because Mr. Spikes's claims are not of such an extraordinary or unusual nature as would be required as a predicate for a "miscarriage of justice" analysis. Specifically, Mr. Spikes's claims are as follows: (1) the Court should not have included the "uncharged conduct" of the additional burglary and two robberies to calculate his offense level; (2) it was prosecutorial misconduct for the Government to make a deliberate misstatement and misrepresentation of facts relating to Mr. Spikes's role in the crimes; and (3) Mr. Spikes's counsel was ineffective for failing to object to these misstatements. Resp. 3-4.

The focus of Mr. Spikes's argument is his claim that the uncharged relevant conduct (specifically, the November 18, 2007 burglary and the December 8, 2007; December 19, 2007; and January 2, 2008 robberies) should not have been considered under section 1B1.3 of the United States Sentencing Guidelines in calculating his offense level.[14] *See generally* Spikes's Reply (Docket No. 241). In fact, the Third Circuit Court of Appeals previously dealt with a similar issue in *United States v. Corso*, 549 F.3d 921 (3d Cir. 2008), in which the defendant argued that although he had waived his appellate rights, enforcing his waiver would constitute a miscarriage of justice because of alleged errors in calculating his Guidelines range. *Id.* at 231. The court disagreed and held that even if the Guidelines calculation was incorrect, "Procedural errors of this nature cannot justify setting aside an appellate waiver because allowing alleged

---

[14] The Government contends that the relevant conduct was appropriately included under section 1B1.3 of the United States Sentencing Guidelines. To be sure, this section of the Sentencing Guidelines is not the model of clarity, thus, prompting the argument that the relevant conduct should not have been included in calculating Mr. Spikes's offense level. *See* § 1B1.3(a)(1)(A); *United States v. Wernick*, 691 F.3d 108, 115 (2d Cir. 2012) (discussing section 1B1.3 of the Sentencing Guidelines). But the Court need not address this because, as explained, Mr. Spikes's efficacious waiver prevents him from raising this argument on collateral attack.

errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." *Id.* (internal quotation marks omitted). Thus, the court concluded, it was not a miscarriage of justice to enforce the defendant's waiver. *See also Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir. 2010) ("This miscalculation of the advisory Guidelines range is precisely the kind of 'garden-variety' claim of error contemplated by Sotirion's appellate waiver. Such an error, even if under ordinary circumstances it would constitute reversible error, cannot 'vault the hurdle erected by the waiver.'" (quoting *United States v. Calderon–Pacheco*, 564 F.3d 55, 59 (1st Cir. 2009) (internal quotation marks and citations omitted)). Thus, even if the uncharged conduct should not have been included in calculating his offense level, following *Corso*, Mr. Spikes knowingly and voluntarily waived his right to collaterally attack that calculation, so that enforcing the waiver as to that claim does not constitute a miscarriage of justice.[15]

To distinguish his claim from the defendant's in *Corso*, Mr. Spikes argues that the sentencing error was the result of prosecutorial misconduct and ineffective assistance of counsel

---

[15] Mr. Spikes contends that, absent the improper use of the "relevant conduct," his Sentencing Guidelines range would have been 130 to 162 months, rather than the 204 months to which he was sentenced. However, even if Mr. Spikes is correct that the relevant conduct should not have been included under section 1B1.3 of the Sentencing Guidelines, Mr. Spikes misunderstand the Sentencing Guidelines, and, in fact, he was not harmed by the inclusion of the relevant conduct. Specifically, Mr. Spikes still had a Guidelines range of 514 to 546 months (not 130 to 162 months as he contends) because of the mandatory terms of imprisonment for Counts 2 and 4 pursuant to 18 U.S.C. § 924(c). *See* Feb. 12, 2009 Presentence Investigation Report at 19. The Sentencing Guidelines range of 130 to 162 months that Mr. Spikes believes is applicable absent the relevant conduct only constitutes his Guideline range for Counts one, three, and five. *Id.* And Mr. Spikes was in fact only sentenced to 84 months for Counts 1, 3, and 5 because of a downward departure pursuant to a section 5K1.1 motion. Judgment, Doc. No. 161. Thus, even assuming that the relevant conduct should not have been used to calculate his offense level, Mr. Spikes was sentenced to 46 months *below* the bottom of the Guidelines for Counts 1, 3, and 5 *without* the inclusion of the relevant conduct.

at sentencing. Mr. Spikes claims that it was prosecutorial misconduct for the Government to request that the Probation Office include the uncharged conduct under section 1B1.3 of the United States Sentencing Guidelines in calculating his offense level. *See generally* Spikes's Reply, Doc. No. 241. Additionally, Mr. Spikes argues that based on the inclusion of the uncharged conduct, his defense counsel was ineffective for failing to challenge the Probation Office's Presentence Investigation Report. The First Circuit in *Sotirion v. United States*, 617 F.3d 27, faced a similar issue and concluded that it was not a miscarriage of justice even if defense counsel failed to object to the sentencing error. *Id.* at 39.[16] Specifically, the Court in *Sotirion* noted that counsel had secured a sentence below that sought by the Government and that the sentencing error was made by the Government, the Court, and the Probation Office alike. *Id.* Here, as in *Sotirion*, even if the relevant conduct should not have been considered under section 1B1.3, Mr. Spikes's counsel was not constitutionally deficient: the alleged error, if error it was, was made by all parties at sentencing, and counsel facilitated for Mr. Spikes a sentence far below his Guidelines range.

Additionally, the Government did not commit prosecutorial misconduct by requesting the inclusion of what it saw as relevant conduct in the Presentence Investigation Report. In order to prevail on a claim of prosecutorial misconduct, Mr. Spikes must demonstrate that the

---

[16] Additionally, numerous other courts of appeals have held that collateral review waivers are enforceable against claims similar to Mr. Spikes's claim of ineffective assistance of counsel at sentencing. *See, e.g., Williams* v. *United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001); *Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). As these courts have recognized "if the law were otherwise, a defendant would be able to circumvent an appellate waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *United States v. Robertson*, 10-757, 2013 WL 4034371, at *12 n.16 (E.D. Pa. Aug. 8, 2013).

prosecutor's conduct "so infected the [sentencing] with unfairness" as to deny the defendant due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Mr. Spikes cannot prevail on this claim because, as the First Circuit Court of Appeals explained in *Sotirion*, even assuming Mr. Spikes was correct about relevant conduct, an incorrect Guidelines calculation does not deprive a defendant of due process if there was a collateral attack waiver. 617 F.3d at 39.

Moreover, the Court perceives no basis for a finding of misconduct by the Government. Although Mr. Spikes would like the Court to divine some malice on part of the Government, the record clearly shows that the Government believed, and in its briefing demonstrates that it still does believe, *see, e.g.*, Govt's Second Supp. Mot. Dismiss, Doc. No. 271, that the uncharged burglary and robberies should have been included in the Presentence Investigation Report under section 1B1.3, and, thus, requested that the Probation Office include such conduct. The Probation Department is not under the U.S. Attorney's Office's –that is, the Department of Justice's – authority; its determination that the conduct should be included was, therefore, independent of the Government's. *See, e.g., Jefferson v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 43, 47 (D.D.C 2009) ("The USPO [(United States Probation Office)] is a component of the Administrative Office of the United States Courts, part of the judicial branch of government."). Thus, this claim for relief must also fail.[17]

---

[17] Mr. Spikes also contends that the Government improperly relied on his proffer statement and co-defendant Burnett's proffer statements as evidence of the above-described relevant conduct. With regard to Mr. Spikes's contention that the Government should not have used his proffer statements at sentencing, the letter from the Assistant U.S. Attorney specifically to the Probation Department states that "any information provided by defendant Spikes during his proffer sessions with the government concerning his involvement in additional armed robberies will NOT be used . . . ." Resp. to Gov't Mot. Dismiss, Ex. B (Doc. No. 238-1). And Mr. Spikes presents no evidence that the U.S. Attorney improperly used this information. Thus, this argument is meritless.

In addition to his claim of prosecutorial misconduct regarding the inclusion of relevant conduct in the Presentence Investigation Report, Mr. Spikes also argues that it was prosecutorial misconduct for the Government to offer untrue facts regarding his involvement in the December 2, 2007 robbery at his guilty plea proceeding. Mr. Spikes contends that the Government deliberately misstated facts by, inter alia, stating that he was the actual robber when, in fact, he had only cased the pharmacy before the robbery. But, as explained above, Mr. Spikes's waiver was knowing and voluntary. He does not contest his guilt for the December 2, 2007 robbery contained in Count I of the Indictment, nor does he argue that the misstatement of his role in the robbery harmed him in anyway by, for example, increasing his sentence. Thus, because Mr. Spikes's waiver was knowing and voluntary, and the Government's misstatement immaterial, the Court perceives no miscarriage of justice resulting from enforcing the waiver as to this claim.

Moreover, it is also clear that the Government, even in misstating the facts at sentencing, did not commit prosecutorial misconduct. While the Government admits that evidence received after Mr. Spikes's guilty plea established that Mr. Spikes did not enter the store during the December 2, 2007 robbery and instead cased the store prior to the robbery, the misstatement was not *intentional*. To the contrary, the Government asserts that it believed at the time of the change of plea hearing that Mr. Spikes was the actual robber, and Mr. Spikes points to no evidence to

---

Mr. Spikes also argues that the Court ordered that Mr. Burnett's proffer statements could not be used against Mr. Spikes. However, the record shows that the Court only limited the use of Mr. Burnett's proffer statements with regard to Mr. Burnett's trial—the Court did not order that the statements could not be used against Mr. Spikes. *See* Doc. Nos. 143-144. Thus, it was not prosecutorial misconduct for the Government to use Mr. Burnett's statements during Mr. Spikes's sentencing. Finally, Mr. Spikes contends that the Government's reference to a third superseding indictment in its letter to the Probation Office was prosecutorial misconduct because there was no such indictment. Mr. Spikes is incorrect: there was in fact a third superseding indictment against Mr. Spikes's co-defendants, Dennis Burnett and Robert Williams. *See* Doc. No. 90. Moreover, the mere mention of this third superseding indictment could not have been harmful to Mr. Spikes.

refute that assertion. Govt's Supp. Mot. 10-12, Doc. No. 239. In fact, the record clearly shows that the Government would have had no reason to know of its misstatement because, at his change of plea hearing, Mr. Spikes *agreed* with the Government's misstatement that Mr. Spikes was the robber during the December 2, 2007 robbery.[18] Thus, Mr. Spikes, who, at his guilty plea hearing *agreed* with—and forwent the ample opportunities to correct or otherwise modify—the Government's statement of fact, part of which he now challenges as a misstatement, cannot now be heard plausibly to claim that the Government's narrative was intentionally misleading. At the time of the change of plea hearing there was no reason for the Government to know that its factual statement regarding the December 2, 2007 robbery was inaccurate, however slightly so. And, it bears reiterating, that the Government's misstatement was not material and the corrected

---

[18] After the Government had stated their factual summary of the robberies for which Mr. Spikes had pled guilty, the Court asked Mr. Spikes directly, "Do you agree that what Ms. Marston has just told me accurately summarizes the facts in this case?" Mr. Spikes responded that there was a factual inaccuracy about his involvement in January 16, 2008 robbery, but he did not contest the factual summary with regard to the December 2, 2007 robbery. After the Government restated the summary of the January 16, 2008 robbery to clear up any discrepancy between the Government's account and Mr. Spikes's account, the Court conducted the following discussion with Mr. Spikes:

> The Court: So with those modifications, Mr. Spikes, do you agree that that's what happened?
>
> Mr. Spikes: Yes.
>
> The Court: As to each of the incidents?
>
> Mr. Spikes: Yes.
>
> The Court: And so you fully admit those facts as we more fully discussed them here?
>
> Mr. Spikes: Yes

Tr. N.T. Dec. 2, 2008, at 42-44.

16

facts not exculpatory, because Mr. Spikes is still guilty of the same crime whether he entered the pharmacy during the robbery or cased it prior to the robbery.[19]

In addition to claiming ineffective assistance of counsel regarding the uncharged conduct, Mr. Spikes contends that his counsel was also ineffective for (1) failing to adequately investigate the Government's case against Mr. Spikes and (2) failing to object to the Government's incorrect recitation of facts at the change of plea hearing and allowing Mr. Spikes to enter a guilty plea without a full understanding of his involvement in the crimes. Because these claims could be construed as assertions that counsel was ineffective in negotiating the Plea Agreement that contains the waiver, if that claim is meritorious, then enforcing the waiver provision in his Plea Agreement could constitute a miscarriage of justice.[20] *See Mabry*, 536 F.3d at 242-43. Thus, the Court must analyze whether Mr. Spikes's counsel was ineffective.

To establish a claim of ineffective assistance of counsel, a defendant must prove that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) counsel's "deficient performance prejudiced the defendant," thereby resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 68-88 (1984). Where, as here, a defendant has entered a guilty plea on the advice of counsel, the second

---

[19] In his most recent submission to the Court, Mr. Spikes appears to argue that based on this factual inaccuracy, his plea colloquy was invalid under Federal Rule of Criminal Procedure 11. *See* Supp. Br. Apr. 9, 2014, Doc. No. 272. While not clearly articulated, Mr. Spikes's argument may be asserting that the plea colloquy violated Rule 11(b)(3), which requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). However, as explained above, although Mr. Spikes's role in the December 2, 2007 robbery was misstated at the plea colloquy, there is no dispute that he is guilty of the Hobbs Act robbery contained in the Indictment, and thus, there was a factual basis for the plea.

[20] While the Court is interpreting Mr. Spikes's claims liberally, Mr. Spikes does not appear to contest the Plea Agreement because he does not want to go to trial and instead is only asking to be resentenced. *See* Spikes's Mot. 21, 23-27 (Nov. 23, 2010).

prong is modified so that the defendant must show that there is a reasonable probability that, but for counsel's errors, he would have proceeded to trial instead of pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689.

As to Mr. Spikes's argument that his counsel failed to investigate the Government's case, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91. Mr. Spikes does not point to any specific area that his counsel failed to investigate and instead relies on bald assertions. Additionally, as the Government points out, Mr. McHugh was present for Mr. Spikes's proffer statements in which Mr. Spikes detailed his involvement in the crimes, and, thus, no further investigation would have been required. *See id.* ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, . . . on information supplied by the defendant.") Therefore, the Court concludes that counsel's investigation was reasonable under the circumstances.

Second, for substantially the same reasons that Mr. Spikes's prosecutorial misconduct argument regarding the Government's misstatement about the particular nature of Mr. Spikes's role in the December 2, 2007 robbery fails, his ineffective assistance argument regarding counsel's failure to object to this inaccurate narrative also fails. As explained above, at the change of plea hearing, Mr. Spikes was given the opportunity to correct any misstatement of fact. Mr. Spikes addressed certain concerns about the January 16, 2008 armed robbery, but did not address any issues with the factual recitation of his role in the December 2, 2007 robbery. He then agreed with the Government's recitation. Without any indication from Mr. Spikes to the

contrary, counsel had no reason to know about this factual discrepancy, and thus no reason to object to its factual recitation or to prevent Mr. Spikes from pleading guilty based on this factual recitation. Mr. Spikes offers no evidence that his counsel knew otherwise. And, again, the Court notes that Mr. Spikes does not claim innocence of the December 2, 2007 robbery, but rather argues merely that his role in the crime was different than asserted at the change of plea hearing.

Finally, counsel's recommendation that Mr. Spikes plead guilty was also reasonable given the sentencing ranges Mr. Spikes faced. By pleading guilty, Mr. Spikes reaped the considerable benefit of the Government's section 5K1.1 motion, and Mr. Spikes was sentenced to 204 months instead of the approximately 500 months he faced at a minimum. Specifically, for Counts 2 and 4 Mr. Spikes faced consecutive mandatory minimum sentences of 84 months and 300 months, respectively. Instead, Mr. Spikes received 60 months for each of the two counts. Thus, the Court concludes that counsel's recommendation that Mr. Spikes plead guilty was within the wide range of reasonable professional assistance. In fact, looking at sentencing, it appears that his counsel provided very effective assistance.

For the reasons discussed above, the Court finds that Mr. Spikes's waiver was knowing and voluntary and enforcing that the waiver as to Mr. Spikes's claim regarding the use of uncharged conduct at sentencing and his allegations of prosecutorial misconduct will not work a miscarriage of justice. Furthermore, the Court concludes that Mr. Spikes has not put forth evidence of prosecutorial misconduct or evidence that his counsel was constitutionally deficient. Thus, Mr. Spikes's § 2255 Motion will be denied.

**III.    Certificate of Appealability**

A certificate of appealability will not issue because Mr. Spikes has not "demonstrate[d] that reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

## IV. Conclusion

For the reasons discussed above, Mr. Spikes's § 2255 petition will be denied. An appropriate Order follows.

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge